**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

MATTHEW DISMUKE,
an individual,

      Case No.:

     Plaintiff,

v.

EQUIFAX INFORMATION
SERVICES LLC,
a foreign limited liability company,
EXPERIAN INFORMATION
SOLUTIONS, INC.,
a foreign for-profit corporation, and
TRANS UNION LLC,
a foreign limited liability company,

     Defendants.

_____/

**NOTICE OF LEAD COUNSEL**

Pursuant to Middle District of Florida Local Rule 2.02(a), Plaintiff designates

AARON M. SWIFT, Esq. as Lead Counsel for Plaintiff.

**COMPLAINT**

**COMES NOW**, Plaintiff, MATTHEW DISMUKE (hereinafter, "Plaintiff"),

by and through the undersigned counsel, and hereby sues Defendants, EQUIFAX

INFORMATION SERVICES LLC (hereinafter, "Equifax"), EXPERIAN

INFORMATION SOLUTIONS, INC. (hereinafter, "Experian"), and TRANS

UNION LLC (hereinafter, "Trans Union") (hereinafter collectively, "Defendants").

In support thereof, Plaintiff states:

1

**PRELIMINARY STATEMENT**

1.      This is an action for damages for violations of the Fair Credit Reporting Act, 15 United States Code, Section 1681 *et seq.* (hereinafter, the "FCRA") wherein Equifax, Experian, and Trans Union each incorrectly reported and verified inaccurate information concerning Plaintiff's Capital One account that was fully settled and paid.

2.      This is also an FCRA action wherein Equifax, Experian, and Trans Union incorrectly reported and inaccurately verified a JPMorgan Chase Bank account belonging to Plaintiff as containing a balance, derogatory past-due payment information, and as charged-off despite Plaintiff's satisfaction of the account's balance via GAP insurance.

**JURISDICTION, VENUE & PARTIES**

3.      Jurisdiction of this Court arises under 28 United States Code, Section 1331 as well as pursuant to the FCRA, 15 United States Code Section 1681, *et seq.*

4.      Defendants are subject to the jurisdiction of this Court as each regularly transacts business in this District, and the events described herein occur in this District.

5.      Venue is proper in this District as the acts and transactions described herein occur in this District.

6.      At all material times herein, Plaintiff is a natural person residing in Pinellas County, Florida.

7.      At all material times herein, Equifax is a foreign limited liability company existing under the laws of the state of Georgia, with its principal place of business located at 1550 W Peachtree Street, Atlanta, Georgia 30309.

8.      At all material times herein, Experian is a for-profit corporation existing under the laws of the state of Ohio with its principal place of business located at 475 Anton Boulevard, Costa Mesa, California 92626.

9.      At all material times herein, Trans Union is a foreign limited liability company existing under the laws of the state of Delaware with its principal place of business located at 555 West Adams Street, Chicago, Illinois 60661.

## FCRA STATUTORY STRUCTURE

10.     Congress enacted the FCRA requiring consumer reporting agencies to adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information.  *See* 15 United States Code, Section 1681b.

11.     Under the FCRA, whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure *maximum possible accuracy* of the information concerning the individual about whom the report relates. *Id.* at § e(b) (emphasis added).

12.     Under the FCRA, if a consumer disputes the completeness or accuracy of any item of information contained in a consumer's file, and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate—free of charge— and report the current status of the disputed information, or delete the item from before the end of the 30-day period beginning on the date on which the agency receives notice of the consumer's dispute.  *Id.* at § i(a).

13.     Under the FCRA, when a consumer reporting agency conducts any reinvestigation with respect to disputed information in the file of any consumer, the consumer reporting agency shall review and consider all relevant information submitted by the consumer. *Id.* at § i(a)(4).

14.     Under the FCRA, if, after any reinvestigation of any information disputed by a consumer, an item of information is found to be inaccurate, incomplete, or cannot be verified, the consumer reporting agency shall promptly delete that item of information from the consumer's file or modify that item of information, as appropriate, based on the results of the reinvestigation. *Id.* at § i(a)(5).

15.     Under the FCRA, after a furnisher of information receives notification pursuant to Section 1681i(a)(2) of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the furnisher shall: (A) conduct an investigation with respect to the disputed information; (B) review all relevant information provided by the consumer reporting agency pursuant to Section 1681i(a)(2) of this title; (C) report the results of the investigation to the consumer reporting agency; and (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis. *Id.* at § s-2(b).

16.     Under the FCRA, any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer: in an amount equal to the sum of any actual damages sustained by the

consumer as a result of the failure; for statutory damages of not less than $100 and not more than $1,000; for such amount of punitive damages as the court may allow; and for the costs of the action together with reasonable attorneys' fees. *Id.* at § n.

17.     Under the FCRA, any person who is negligent in failing to comply with any requirement imposed with respect to any consumer is liable to that consumer in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure and the costs of the action together with reasonable attorneys' fees. *Id.* at § o.

## GENERAL ALLEGATIONS

18.     At all material times herein, Plaintiff is a "consumer" as defined by the FCRA, Section 1681a(c) because he is an individual.

19.     At all material times herein, Defendants credit report information concerning a credit card referenced by account number ending in -4448 (hereinafter, "Capital One Account").

20.     At all material times herein, Defendants credit report information concerning a JPMCB automobile loan referenced by account number ending in -1602 (hereinafter, "JPMCB Account") (hereinafter collectively with the Capital One Account, the "Accounts").

21.     At all material times herein, Equifax is a "consumer reporting agency" as defined in 15 United States Code, Section 1681a(f) of the FCRA and regularly engages in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports.  Experian

disburses such consumer reports to third parties under contract for monetary compensation.

22. At all material times herein, Experian is a "consumer reporting agency" as defined in 15 United States Code, Section 1681a(f) of the FCRA and regularly engages in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports. Experian disburses such consumer reports to third parties under contract for monetary compensation.

23. At all material times herein, Trans Union is a "consumer reporting agency" as defined in 15 United States Code, Section 1681a(f) of the FCRA and regularly engages in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports. Trans Union disburses such consumer reports to third parties under contract for monetary compensation.

24. At all material times herein, Defendants act themselves or through their agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

25. All necessary conditions precedent to the filing of this action occurred, or Defendants waived or excused the same.

## FACTUAL ALLEGATIONS

### The Capital One Account

26. On or about November 28, 2015, Plaintiff established the Capital One

6

Account with Capital One by opening the credit card account with Capital One.

27.    During or before October 2020, Plaintiff fell behind on payments with respect to the Capital One Account.

28.    During or about October 2020, Plaintiff received a letter from Capital One, offering to accept a reduced balance in full satisfaction of the Capital One Account.

29.    Pursuant to the terms of settlement offer, Plaintiff was required to pay Capital One a total sum of $231.54 on or before December 27, 2020, in full satisfaction of the balances of the Capital One Account.

30.    Plaintiff accepted Capital One's offer and made the required payment in full prior to December 27, 2020.

31.    As such, as of at least December 27, 2020, Plaintiff's Capital One Account's balance was zero and Plaintiff was responsible for no debt to Capital One on the Capital One Account.

### The JPMCB Account

32.    On or about November 2, 2017, Plaintiff obtained an automobile loan from JPMorgan Chase (hereinafter, "JPMCB") resulting in the JPMCB Account.

33.    During or about November 2020, Plaintiff was involved in a car accident in the vehicle securing the JPMCB Account and Plaintiff was not the at-fault driver.

34.    As a result, Plaintiff's insurance company totaled his vehicle sercuring the JMPCB Account.

35.    At the time of the accident, Plaintiff owed a balance on the JPMCB

7

Account.

36.     However, Plaintiff had GAP insurance with his insurance company and any balance owed to JPMCB on the JPMCB Account was covered by that insurance.

37.     As such, Plaintiff no longer owed a balance to JPMCB on the JPMCB Account.

### Plaintiff's First Dispute

38.     In October 2023, Plaintiff discovered that Equifax, Experian, and Trans Union each reported the Accounts with misleading and/or erroneous information.

39.     More specifically, as of October 2023, Equifax, Experian, and Trans Union reported the Capital One Account as charged off between the months of January 2021 and September 2021 and/or October 2021 and Equifax and Experian reported the Capital One Account as last paid in August 2021 with no last payment value.

40.     To be clear, the Capital One Account was settled in full and last paid no later than December 2020.

41.     As of October 2023, Equifax, Experian, and Trans Union reported the JPMCB Account as containing a balance of $3,062 and with a "charged off" status.

42.     As such, on or about February 7, 2024, Plaintiff submitted a written dispute to Equifax, Experian, and Trans Union (hereinafter, "First Dispute").

43.     Plaintiff's First Dispute described the Accounts, the Settlement, Plaintiff's payment on the Capital One Account, the car accident, and Plaintiff's GAP insurance coverage.

44.     Within Plaintiff's First Dispute, Plaintiff enclosed copies of the settlement letter regarding the Capital One Account and a copy of Plaintiff's GAP insurance policy.

45.     Plaintiff's First Dispute requested, if any of the disputed information was verified, that Equifax, Experian, and Trans Union provide a description of the procedures used to verify the accuracy and completeness of the Accounts' information.

46.     Equifax received Plaintiff's First Dispute.

47.     Experian received Plaintiff's First Dispute.

48.     Trans Union received Plaintiff's First Dispute.

49.     At minimum, Equifax communicated Plaintiff's dispute to Capital One and JPMCB.

50.     Defendants purportedly verified the accuracy of all information about the Accounts that each had previously reported to Equifax, Experian, and Trans Union by Capital One and JPMCB.

51.     On or about March 5, 2024, Equifax sent a response to Plaintiff, purportedly verifying the reporting of both Accounts as accurate and continued reporting the Capital One Account as charged off between January 2021 and September 2021, with date of last payment in August 2021, and without an amount for the last payment made, and continued to report the JPMCB Account as charged off with a balance in excess of $3,000 due and/or past due.

52.     Experian failed to respond to Plaintiff's First Dispute.

53.     Trans Union failed to respond to Plaintiff's First Dispute.

9

**Plaintiff's Second Dispute**

54.    On or about March 12, 2024, and because Plaintiff did not receive dispute results from either Experian and Trans Union, Plaintiff obtained his credit disclosure report from Equifax, Experian, and Trans Union.

55.    As of March 12, 2024, Equifax, Experian, and Trans Union *continued* to report the Capital One Account as charged off between the months of January 2021 and September 2021 and/or October 2021 and Equifax and Experian reported the Capital One Account as last paid in August 2021 with no last payment value.

56.    To be clear, the Capital One Account was settled in full and last paid no later than December 2020.

57.    As of March 12, 2024, Equifax, Experian, and Trans Union continued to report the JPMCB Account as containing a balance of $3,062 and with a "charged off" status.

58.    As such, during or about April 2024, Plaintiff sent a second dispute letter to Equifax, Experian, and Trans Union disputing reporting of the Accounts (hereinafter, "Second Dispute").

59.    Plaintiff's Second Dispute *again* enclosed copies of the settlement letter regarding the Capital One Account and a copy of Plaintiff's GAP insurance policy and also enclosed excerpts from Equifax, Experian, and Trans Union's credit reports and a copy of Plaintiff's First Dispute.

60.    Plaintiff's Second Dispute also continued to describe the Accounts, the Settlement, Plaintiff's payment on the Capital One Account, the car accident, and

10

Plaintiff's GAP insurance coverage.

61. Plaintiff's Second Dispute requested, if any of the disputed information as verified, that Equifax, Experian, and Trans Union provide a description of the procedures used to verify the accuracy and completeness of the Account's information.

62. On or about April 8, 2024, Trans Union received Plaintiff's Second Dispute.

63. Trans Union communicated Plaintiff's dispute to Capital One and JPMCB.

64. On or about April 16, 2024, Experian sent a fax to Plaintiff's counsel confirming receipt of Plaintiff's Second Dispute and claiming to be conducting a reinvestigation of Plaintiff's Second Dispute.

65. However, Experian failed to send dispute results to Plaintiff in response to Plaintiff's Second Dispute.

66. On or about April 16, 2024, Equifax sent a letter to Plaintiff's counsel claiming to be unable to identify *Plaintiff's counsel's file* (emphasis added).

67. To be clear, Plaintiff's counsel's credit report was not being disputed.

68. Furthermore, Plaintiff's Second Dispute provided Experian with enough information to identify Plaintiff's Second Dispute as regarding Plaintiff and not Plaintiff's counsel.

69. Equifax failed to send dispute results to Plaintiff in response to Plaintiff's Second Dispute.

70. On or about April 24, 2024, Trans Union sent dispute results to Plaintiff

11

wherein Trans Union advised it was still reporting the Capital One Account with late payment information after December 2020 and Trans Union was still reporting a balance owed on the JPMCB Account.

### Plaintiff's Third Dispute

71.    On or about May 24, 2024, Plaintiff again disputed the Accounts to Equifax, Experian, and Trans Union, this time directly by telephone (hereinafter, "Third Dispute").

72.    More specifically, Plaintiff again disputed Defendants' respective reporting errors on the Accounts.

73.    In response to Plaintiff's Third Dispute, Equifax, Experian, and Trans Union each advised they could not make the changes requested by Plaintiff.

74.    Equifax did not send dispute results to Plaintiff regarding his Third Dispute.

75.    Experian did not send dispute results to Plaintiff regarding his Third Dispute.

76.    Trans Union did not send dispute results to Plaintiff regarding his Third Dispute. continued reporting erroneous information with respect to Plaintiff's Capital One Account and JPMCB Account.

77.    Following Plaintiff's Third Dispute, Defendants each continued reporting the Capital One Account with derogatory information in months after December 2020.

78.    Similarly, following Plaintiff's Third Dispute, Defendants each

continued reporting the JPMCB Account with a balance allegedly owed.

79.     Following Plaintiff's First Dispute, Plaintiff was evaluated for credit via account review inquiries by his existing creditors and such reviews resulted in credit decisions based, at least in part, upon inaccurate information concerning the Accounts contained on his Equifax, Experian, and Trans Union consumer credit reports, which were accessed as part of the reviews.

80.     Plaintiff has retained Undersigned Counsel for the purpose of pursuing this matter against Defendants, and Plaintiff is obligated to pay his attorneys a reasonable fee for their services.

81.     Additionally, as a result of Defendants' actions, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, and confusion, believing that despite Plaintiff's dispute efforts, Plaintiff must endure the erroneous and inaccurate reporting of the Accounts.

82.     Plaintiff further dealt with the stress and anxiety of feeling hopeless, believing that he would continue to be evaluated for credit upon the erroneous and incorrect reporting and that Plaintiff would instead pay higher interest rates in the event he could obtain financing.  Plaintiff suffered additional actual damages in the form of damage to his reputation.

83.     The FCRA, Sections 1681n or 1681o, or both, provide for the award of up to $1,000.00 statutory damages, actual damages, punitive damages, as well as an award of attorneys' fees and costs to Plaintiff, should Plaintiff prevail in this matter against Defendants.

## COUNT ONE:
## FAIR CREDIT REPORTING ACT –
## <u>VIOLATION OF 15 UNITED STATES CODE, SECTION 1681e(b)</u>

Plaintiff re-alleges paragraphs one (1) through eighty-three (83) as if fully restated herein and further states as follows:

84.    Equifax, Experian, and Trans Union are each subject to, and violated the provisions of, 15 United States Code, Section 1681e(b), by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files published and maintained concerning Plaintiff.

85.    Equifax, Experian, and Trans Union each willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports regarding the Accounts.

86.    As described above, Plaintiff was required to pay Capital One a total sum of $231.54 on or before December 27, 2020, in full satisfaction of the balances of the Capital One Account.

87.    Plaintiff accepted Capital One's offer and made the required payment in full prior to December 27, 2020.

88.    As such, as of at least December 27, 2020, Plaintiff's Capital One Account's balance was zero and Plaintiff was responsible for no debt to Capital One on the Capital One Account.

89.    Additionally, Plaintiff was in a no-fault accident in November 2020 which resulting in Plaintiff's insurance company totaling the vehicle securing the JPMCB Account, and at the time of the accident, Plaintiff owed a balance on the

14

JPMCB Account.

90.     However, Plaintiff had GAP insurance with his insurance company and any balance owed to JPMCB on the JPMCB Account was covered by Plaintiff's GAP insurance.

91.     As such, Plaintiff no longer owed a balance to JPMCB on the JPMCB Account.

92.     Despite Plaintiff no longer owing a balance on the Capital One Account as of December 2020, Equifax, Experian, and Trans Union reported the Capital One Account as charged off between the months of January 2021 and September 2021 and/or October 2021 and Equifax and Experian reported the Capital One Account as last paid in August 2021 with no last payment value.

93.     To be clear, the Capital One Account was settled in full and last paid no later than December 2020 and any late reporting thereafter is inaccurate and misleading.

94.     As of October 2023, Equifax, Experian, and Trans Union reported the JPMCB Account as containing a balance of $3,062 and with a "charged off" status when such balance should have been $0.00 as of November 2020.

95.     Moreover, Defendants *continued* their respective inaccurate and misleading of the reporting after Plaintiff initiated no less than three (3) disputes with Defendants notifying Defendants of their respective reporting errors.

96.     Such reporting of the Accounts is false and evidences Equifax's, Experian's, and Trans Union's failure to establish or follow reasonable procedures to

15

assure the maximum possible accuracy of Plaintiff's credit reports and credit file.

97. Between 2022 and the date of this Complaint, Equifax, Experian, and Trans Union generated and published Plaintiff's credit reports to Plaintiff's creditors and potential lenders including the above-referenced inaccurate, incomplete, and/or materially misleading information.

98. Overall, Equifax, Experian, and Trans Union willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit reports and credit files when investigating/re-investigating Plaintiff's disputes of the above-referenced inaccuracies contained in her Equifax, Experian, and Trans Union credit reports and credit file.

99. As a result of Equifax's, Experian's, and Trans Union's conduct, actions, and inactions, Plaintiff suffered damage to his credit reputation and credit worthiness, Plaintiff was deterred from making further credit applications as he believed he would not be able to obtain favorable credit terms as a result of Equifax's, Experian's, and Trans Union's erroneous and continued reporting of the Accounts and did not wish to further damage his credit score with futile credit inquires, and the was continually evaluated for credit using consumer reports that reported the Accounts with false information resulting in the Accounts being reported as a derogatory, negative, and/or adverse.

100. Overall, Equifax, Experian, and Trans Union defamed Plaintiff's credit worthiness as well as Plaintiff's personal character, and Equifax, Experian, and Trans Union unfairly discriminated against Plaintiff by ignoring—or failing to reasonably

16

review—Plaintiff's documents enclosed with her repeated disputes.

101.   Equifax's, Experian's, and Trans Union's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

102.   Equifax's, Experian's, and Trans Union's violations of 15 United States Code Section 1681e(b), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n, or 1681o, or both.

## COUNT TWO:
## FAIR CREDIT REPORTING ACT –
## VIOLATION OF 15 UNITED STATES CODE
## SECTIONS 1681i(a)(1), i(a)(4), i(a)(5), and i(a)(6)

Plaintiff re-alleges paragraphs one (1) through eighty-three (83) as if fully restated herein and further states as follows:

103.   Equifax, Experian, and Trans Union are each subject to, and violated the provisions of, 15 United States Code, Section 1681i(a)(1),  1681i(a)(4), 1681i(a)(5), and 1681i(a)(6) by: (1) failing to conduct reasonable investigations/re-investigations of Plaintiff's disputes to determine whether the disputed information was inaccurate and by failing to subsequently update the inaccurate information in Plaintiff's credit reports and credit files; (2) failing to review and consider all relevant information received in Plaintiff's disputes, including all relevant attachments; (3) failing to update or delete any information that was the subject of Plaintiff's disputes found to be

17

inaccurate or that could not be verified; and (4) failing to provide written notice of dispute results to Plaintiff within five (5) business days after the completion of a reinvestigation.

104.    More specifically, Equifax, Experian, and Trans Union willfully and/or negligently refused to properly investigate/re-investigate Plaintiff's consumer reports upon receiving Plaintiff's disputes, as described herein.

105.    Defendants received Plaintiff's First Dispute, Second Dispute, and Third Dispute.

106.    Plaintiff's First Dispute, Second Dispute, and Third Dispute explained that Plaintiff paid and settled his Capital One Account in December 2020 and Defendants' reporting of the Capital One Account as late, past-due, or charged-off any date after December 2020 is inaccurate.

107.    Despite Plaintiff's disputes, Equifax, Experian, and Trans Union failed to request any documents from Capital One and continued to report the Capital One Account as last, past-due, and or charged-off in months after December 2020.

108.    Defendants purportedly verified their respective reporting of the Capital One Account with Capital One at least once.

109.    Plaintiff's First Dispute, Second Dispute, and Third Dispute also explained that Plaintiff's GAP insurance covered any alleged balance owed on the JMPCB Account and such account should be reported as $0.00 owed as of November 2020.

110.    Despite Plaintiff's disputes, Equifax, Experian, and Trans Union failed

to request any documents from JPMCB and continued to report the JPMCB Account as last, past-due, and or charged-off in months after December 2020.

111. Defendants purportedly verified their respective reporting of the Capital One Account with Capital One at least once.

112. Importantly, Defendants each failed to send or otherwise provide dispute results to Plaintiff in response to two (2) of Plaintiff's disputes.

113. Rather than conduct their own, independent investigation/re-investigation regarding Plaintiff's repeated disputes, Equifax, Experian, and Trans Union solely relied on information supplied by Capital One and JPMCB and parroted assertions from Capital One and JPMCB.

114. Equifax's, Experian's, and Trans Union's failure to review and consider all information received in Plaintiff's disputes was done in bad faith.

115. Equifax's, Experian's, and Trans Union's investigation/re-investigations were not conducted in such a way as to assure whether information regarding Plaintiff and the Accounts were inaccurate and Equifax, Experian, and Trans Union failed to subsequently correct the inaccurate information in Plaintiff's credit reports and credit files.

116. Such reporting is false and evidences Equifax's, Experian's, and Trans Union's respective failures to conduct reasonable investigation/re-investigations of Plaintiff's repeated disputes.

117. Equifax's, Experian's, and Trans Union's investigation/reinvestigations of Plaintiff's disputes were not conducted reasonably.

19

118.   Equifax's, Experian's, and Trans Union's investigation/reinvestigations of Plaintiff's disputes were not conducted in good faith.

119.   Equifax's, Experian's, and Trans Union's investigation/reinvestigation procedures are unreasonable.

120.   Equifax's, Experian's, and Trans Union's investigation/re-investigations of Plaintiff's disputes were not conducted using all information and documents reasonably available to Equifax, Experian, and Trans Union.

121.   Equifax's, Experian's, and Trans Union's investigation/reinvestigations were *per se* deficient by reason of these failures in Equifax's, Experian's, and Trans Union's reinvestigations of Plaintiff's disputes and the Accounts.

122.   As a result of Equifax's, Experian's, and Trans Union's conduct, actions, and inactions, Plaintiff suffered damage to his credit reputation and credit worthiness, he was deterred from making further credit applications as he believed he would not be able to obtain favorable credit terms as a result of Equifax, Experian, and Trans Union's erroneous and continued reporting of the Accounts and did not wish to further damage his credit score with futile credit inquires, and he was continually evaluated for credit using consumer reports that reported the Accounts with false information resulting in the Accounts being reported as derogatory, negative, or adverse.

123.   Overall, Equifax, Experian, and Trans Union defamed Plaintiff's credit worthiness as well as Plaintiff's personal character, and Equifax, Experian, and Trans Union unfairly discriminated against Plaintiff by ignoring—or failing to reasonably review—Plaintiff's documents enclosed with his repeated disputes.

124.    Equifax's, Experian's, and Trans Union's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

125.    Equifax's, Experian's, and Trans Union's actions in violation of 15 United States Code, Sections 1681i(a)(1), 1681i(a)(2), 1681i(a)(4), and 1681i(a)(5) constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive, damages, as well as attorneys' fees and costs enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

## PRAYER FOR RELIEF

**WHEREFORE**, as a direct and proximate result of Defendants' conduct, Plaintiff respectfully requests an entry of:

a.    Judgment against Defendants for maximum statutory damages for violations of the FCRA;

b.    Actual damages in an amount to be determined at trial;

c.    Compensatory damages in an amount to be determined at trial;

d.    Punitive damages in an amount to be determined at trial;

e.    An award of attorney's fees and costs; and

f.    Any other such relief the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable by right.

## SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Plaintiff hereby gives notice to Defendants and demands that Defendants and their affiliates safeguard all relevant evidence—paper, electronic documents, or data—pertaining to this litigation as required by law.

Respectfully submitted,

**SWIFT LAW PLLC**

/s/ *Aaron M. Swift*
Aaron M. Swift, Esq., FBN 0093088
Jordan T. Isringhaus, Esq., FBN 0091487
Sean E. McEleney, Esq., FBN 125561
Jessica A. Cowan, Esq., FBN 1069016
11300 4th Street N., Suite 260
St. Petersburg, FL 33716
Phone: (727) 490-9919
Fax: (727) 255-5332
aswift@swift-law.com
jisringhaus@swift-law.com
smceleney@swift-law.com
jcowan@swift-law.com
jmurphy@swift-law.com
*Co-Counsel for Plaintiff*

**BANNON LAW GROUP**

/s/ *G. Tyler Bannon*
**G. Tyler Bannon, Esq., FBN 0105718**
1901 Dr. M.L. King Jr. Street N.
St. Petersburg, FL 33704
Phone: (727) 896-4455
Fax: (727) 895-1312
tyler@rbannonlaw.com
jessica@rbannonlaw.com
*Co-counsel for Plaintiff*

22